UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ANDIA EVANS,                        )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    Civil Action No. 10-1654 (RBW)
                                    )
FIRST MOUNT VERNON, ILA,            )
SHERMAN BROWN, and                  )
COHN, GOLDBERG, & DEUTSCH, LLC,     )
                                    )
        Defendants.                 )
_____)

## MEMORANDUM OPINION

This case is currently before the Court on defendant Cohn, Goldberg, & Deutsch, LLC's ("CGD") motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. See CGD's Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1) and 12(b)(6) ("Def.'s Mot."). Although the plaintiff, Andia Evans, brings this case against two additional defendants asserting a variety of claims, CGD's motion to dismiss pertains only to the plaintiff's claims of fraud and breach of fiduciary duty, as those are the only claims alleged against CGD. After considering all of the relevant submissions by the parties, the Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion to dismiss.[1]

---

[1] In addition to considering CGD's motion, the Court also considered: the Verified Amended Complaint for Predatory Lending Fraud and Civil Conspiracy ("Compl."); Defendant CGD's Memorandum in Support of its Motion to Dismiss ("Def.'s Mem."); the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"); and Defendant CGD's Reply Memorandum in Support of its Motion to Dismiss ("Def.'s Reply").

1

# I. BACKGROUND

In August of 2008, the plaintiff was living in a house owned by her grandparents, Compl. ¶¶ 9, 12, which she sought to purchase from them. Id. ¶ 9. She contacted a mortgage broker, defendant Sherman Brown ("Brown"), to help her secure financing for the purchase. Id. ¶ 13. At that time, the property had an existing mortgage of $26,576.11, and was valued at $237,000. Id. ¶ 10. In discussions with Brown prior to the purchase, the plaintiff told Brown that she currently lived in the house, and that she intended to continue living there after the purchase. Id. ¶ 14. She further explained that her reason for purchasing the house was to live near her grandparents, who were experiencing health problems. Id. ¶ 9, 15. Despite this information, Brown helped the plaintiff secure a commercial, rather than residential mortgage. Id. ¶¶ 30, 38-39, 41, 46-47, 61, 67, 71. And Brown secured the commercial loan even though such loans are subject to stiffer penalties upon default and have fewer protections than residential loans. Id. ¶¶ 30, 39, 46-47, 71.

Defendant First Mount Vernon, ILA ("FMV"), a privately owned, Virginia-based mortgage lending firm, financed the plaintiff's purchase of the house. Id. ¶¶ 6, 9. The mortgage on the house was secured by a deed of trust, on which the plaintiff contends defendant CGD, a Maryland law firm, was the trustee.[2] Id. ¶¶ 8, 25. The deed of trust granted the trustee the power to sell the property in the event of a default. Def.'s Mot., Exhibit ("Ex.") A (Commercial Loan Balloon Deed of Trust) ("Deed of Trust") at 1.

At the time of the purchase, the plaintiff's gross monthly income was approximately $2,000. Compl. ¶ 16. Although the plaintiff presented Brown with documentation showing this

---

[2] In this type of transaction, legal title in real property is transferred to a trustee (here, CGD), who holds the property as security for the loan.

amount as her monthly income, Brown indicated on the loan application that her gross monthly income was $2,773.33. Id. The total amount of the loan Brown secured for the plaintiff was $119,500, with an interest rate of 18% per year, and payable in monthly installments of $1,792.50. Id. ¶ 18. Thus, the monthly payment represented nearly 90% of the plaintiff's gross income, and actually exceeded her income after deductions for taxes. Id. ¶¶ 18, 71. The loan was structured as a one-year loan with a balloon payment at the end of the loan period.[3] Id. ¶ 19. The loan was structured so that Evans was not required to make any monthly payments during the one-year term of the loan. Id. ¶ 18. Instead, FMV escrowed the loan funds, and then drew against those funds to pay the monthly installments on the mortgage.[4] Id. ¶ 26. The entire outstanding balance of the mortgage would then be due in one lump-sum payment at the end of the one-year term. Id. ¶ 19  The loan included penalties for nonpayment at the end of the loan term, and the interest rate would also increase to 24% at the end of the loan term. Id. ¶ 18. Apparently to allay any fears the plaintiff may have had about the unfavorable terms in the loan, Brown represented to the plaintiff that he would help her refinance the loan at the end of the one-year term. Id. ¶¶ 19, 35, 72.

When the one-year term of the loan expired, the plaintiff was unable to pay the outstanding balance of the mortgage and FMV instituted foreclosure proceedings. Id. ¶¶ 74, 77. The plaintiff then filed this action in the Superior Court of the District of Columbia against all three defendants alleging fraud, violation of the District of Columbia Consumer Protection

---

[3]  A balloon payment constitutes the amount a borrower is required to pay to relinquish the outstanding balance owed on a loan. In this case, the monthly payments represented only the 18% per annum interest due on the loan. See Def.'s Mot., Ex. C (Balloon Deed of Trust Note) ("Note"). Thus, at the end of the one-year period of loan, the plaintiff was required to repay the entire amount she had borrowed, unless she had paid more than the required monthly installments.

[4]  Such escrowed funds are called an "interest reserve," and are used by lenders to ensure that a loan remains current by drawing on those funds to make the monthly payments.

Procedures Act, D.C. Code §§ 28-3901 - 3913 (2001), violation of the District of Columbia Mortgage Lenders Brokers Act, id. §§ 26-1101 - 1121, violation of the District of Columbia Usury Statute, id. §§ 28-3301 - 3314, civil conspiracy to commit fraud and to violate the District of Columbia Consumer Protection Procedures Act, id. §§ 28-3901 - 3913, and the District of Columbia Usury Statute, id. §§ 28-3301 - 3314, intentional infliction of emotional distress, negligent supervision, and breach of fiduciary duty owed by trustees. Id. ¶¶ 33-97. Defendant CGD removed the case to this Court based on diversity jurisdiction,[5] and has now filed its motion to dismiss the two claims asserted against it—Fraud (Count 1) and Breach of Fiduciary Duty Owed by Trustees (Count 8). As grounds for its motion, CGD argues that the Court lacks subject matter jurisdiction because the plaintiff is a debtor in bankruptcy, that the plaintiff's claims are barred by res judicata, and that the plaintiff has failed to state a claim for breach of fiduciary duty.

## II. STANDARDS OF REVIEW

A. Rule 12(b) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of claims for which the plaintiff fails to set forth allegations sufficient to establish the court's jurisdiction over the subject matter of the claims presented. Fed. R. Civ. P. 12(b)(1). In deciding a motion to dismiss challenging the Court's subject-matter jurisdiction under Rule 12(b)(1), a court "must accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, Brown v. District of Columbia, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (internal quotation marks omitted), but courts are "not required . . . to accept inferences

---

[5] The plaintiff is a resident of the District of Columbia. Defendant CGD's principal place of business is in Maryland and it is organized as a Maryland limited liability company; Defendant FMV's principal place of business is in Virginia; and Defendant Brown is a Maryland resident.

unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Ultimately, however, the plaintiff bears the burden of establishing the Court's jurisdiction, Rasul v. Bush, 215 F. Supp. 2d 55, 61 (D.D.C. 2002), and where subject-matter jurisdiction does not exist, "the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion, it must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must also "give the defendant fair notice of what the claim is and the grounds on which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted), and although "detailed factual allegations" are not necessary to provide the grounds of entitlement to relief, a plaintiff must furnish "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." Id. A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). In evaluating a Rule 12(b)(6) motion, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Schuler v. U.S., 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citations omitted). The Court "may consider only the facts alleged in the complaint, any

5

documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

The Federal Rules of Civil Procedure permit conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment where matters outside the pleadings are presented. Fed. R. Civ. P. 12(b). If, however, documents are referenced in the complaint, those documents are considered incorporated into the complaint by reference. See Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Furthermore, documents that are "integral to the claim" may also be considered in resolving motions to dismiss under Rule 12(b)(6) without converting the motion to a summary judgment motion. Meijer v. Biovail Corp., 533 F.3d 857, 867 n.* (D.C. Cir. 2008).

B. Rule 9(b) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pleaded with particularity. Fed. R. Civ. P. 9(b). "Under District of Columbia law, an allegation of fraud must include the following essential elements: (1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed." Acosta Orellana v. CropLife Int'l., 711 F. Supp. 2d 81, 96 (D.D.C. 2010) (Walton, J.) (internal quotation marks omitted). "In this Circuit, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." Id. (quoting Chelsea Condo. Unit Owners Ass'n v. 1815 A. St., Condo. Grp., LLC, 468 F. Supp. 2d 136, 146 (D.D.C. 2007).

## III. LEGAL ANALYSIS

### A. Consideration of Documents Outside the Pleadings

As a preliminary matter, the plaintiff asserts here that CGD's motion to dismiss should be converted into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that CGD relies on documents that fall outside the Complaint. Pl.'s Opp'n at 1. This argument fails because the exhibits offered by CGD in its motion are either central to the plaintiff's claims, and are thus incorporated into the Complaint, or are appropriate for the Court's consideration in determining its jurisdiction in this case.

CGD includes seven exhibits with its Motion to dismiss: Exhibit A: the Commercial Deed of Trust; Exhibit B: the Promissory Note; Exhibit C: the Assignment of Rents; Exhibit D: the Bankruptcy Schedules; Exhibit E: the Consent Order and Stipulation Modifying Automatic Stay; Exhibit F: the Amended Chapter 13 Plan, and Exhibit G: the Order Denying Motion to Extend Time and To Stay Effectiveness of Orders. Exhibits A-C are permissible for consideration, as the plaintiff either referred to them in her Complaint or they are integral to the claim as documents regarding the loan at issue. See Compl. ¶ 25 (discussing th Deed of Trust); id. ¶ 18 (noting the Promissory Note); id. ¶ 25 (referencing the Assignment of Rents). The plaintiff referred to Exhibits D-G in passing in the Complaint, see Compl. ¶¶ 78, 94, and, moreover, these documents are offered by CGD to challenge this Court's jurisdiction, Def.'s Mem. at 9-10, and thus may be considered by the Court without converting the motion to dismiss into a motion for summary judgment. See Scolaro, 104 F. Supp. 2d at 22 ("[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."). Therefore, the exhibits CGD submitted with its Motion to Dismiss do not require that the motion be converted into one for summary judgment.

B. CGD's Subject Matter Jurisdiction Challenge

CGD argues that this Court lacks subject-matter jurisdiction over the plaintiff's claims because, as a debtor in bankruptcy, the plaintiff lacks standing to "prosecute" her claims. CGD's Mot. ¶ 1; Def.'s Mem. at 8-9. Alternatively, CGD argues that because the "[p]laintiff's claims seek[] recovery for herself (as opposed to [recovery] on behalf of the [bankruptcy] estate), [the claims] are not proper." Def.'s Mem. at 8-9; see also Def.'s Mot. ¶¶ 1-2.

CGD's first assertion is incorrect; the plaintiff does have standing. The only cases CGD cites as support for its proposition that the plaintiff lacks standing as a debtor in bankruptcy refer to standing in the Chapter 7 bankruptcy context.[6] But the plaintiff is in Chapter 13 bankruptcy, Pl.'s Opp'n. at 13, and because Chapter 7 deals with liquidation and Chapter 13 deals with rehabilitation, the standing rules differ. Chapter 13 debtors do have standing to bring claims on behalf of the bankruptcy estate. Smith v. Rockett, 522 F.3d 1080, 1081-82 (10th Cir. 2008) (discussing the differences between debtors in Chapter 7 and Chapter 13 bankruptcy, and noting that because of those differences, the four circuits that have considered the standing of debtors in bankruptcy have found that Chapter 13 debtors have standing); In re DiSalvo, 219 F.3d 1035, 1039 (9th Cir. 2000) (observing that in Chapter 7 proceedings only the trustee has standing, but explaining that the same is not true for Chapters 11 and 13 in which the debtors in possession also have standing); In re Dawnwood Props., 209 F.3d 114, 116 (2d Cir. 2000) (distinguishing the standing of Chapter 13 debtors from Chapter 11 debtors to litigate causes of action that, outside bankruptcy, would belong to the debtor, and explaining that "because creditors' recovery

---

[6]   In her Opposition, the plaintiff addresses a different issue than that raised by CGD, namely, whether this Court is the correct forum in which to bring her claims (as opposed to the Bankruptcy Court). See Pl.'s Opp'n. at 12-13. As CGD notes in response, it is not asserting a problem with this forum, but rather disputes that the plaintiff, considering her status as a Chapter 13 debtor in possession, has standing to bring her claims in any forum. Def.'s Reply at 2 n.3.

8

in Chapter 13 is drawn from a debtor's earnings rather than from assets of the bankruptcy estate, a trustee's participation is not needed to protect the rights of Chapter 13 creditors"); Cable v. Ivy Tech State Coll., 200 F.3d 467, 472 (7th Cir. 1999) (finding that Chapter 13 debtors in possession have standing both under the Federal Rules of Bankruptcy Procedure and case law, while Chapter 7 debtors do not); In re Dawson, 411 B.R. 1, 23-24 (Bankr. D.D.C. 2008) (allowing Chapter 13 debtors standing because they retain possession of their property in bankruptcy); In re Bailey, 306 B.R. 391, 392 n.1 (Bankr. D.D.C. 2004) (finding that a Chapter 7 debtor does not have standing to sue on behalf of the bankruptcy estate, but distinguishing Chapter 13 debtors in possession). The plaintiff's standing rests on the reasonable assumption that she is pursuing her claims on behalf of the bankruptcy estate, and, as explained above, the Court must draw all reasonable inferences in favor of the plaintiff. Brown, 514 F.3d at 1283. As such, the plaintiff has standing as a Chapter 13 debtor in possession.

CGD, however, contends that because the Complaint identifies Andia Evans as a natural person, and seeks redress for violations of her rights, the plaintiff is therefore seeking recovery for herself as an individual. Def.'s Mem. at 9. The inference CGD attempts to draw from these general background statements—that Evans seeks recovery on her own behalf rather than that of the bankruptcy estate—is inapposite, considering the consequences of filing for bankruptcy under Chapter 13. Nearly all of a debtor's assets, including potential causes of action, become property of the bankruptcy estate at the time a Chapter 13 action is filed. See 11 U.S.C. § 541 (2006). Indeed, here the confirmed Chapter 13 plan states as much. See Def.'s Mot., Ex. F (Amended Plan & Order) at 1. Thus, if the plaintiff receives any recovery in this case, the award would necessarily become part of the bankruptcy estate. Accordingly, the plaintiff has standing

to pursue legal claims on behalf of the bankruptcy estate, and CGD's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction must be denied.

      C. CGD's Res judicata Challenge

The doctrine of res judicata provides that a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Issues that must be resolved through adversary proceedings are not part of the Chapter 13 confirmation process, and, unless they are actually litigated, Chapter 13 plan confirmations will not have preclusive effect as to those issues.[7] See Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) ("Because confirmation of a Chapter 13 plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters, confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding. In other words, if an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." (internal citations omitted)).

CGD argues that because the plaintiff consented to the confirmation of her Chapter 13 plan and did not object to the Bankruptcy Court's modification of the automatic stay, her fraud and breach of fiduciary duty claims are barred by res judicata. Def.'s Mot. ¶ 7; Def.'s Mem. at 9-10. As support for its position, CGD cites only cases that generally discuss the principal of res judicata, and not specifically the issue of whether a debtor's causes of action that existed prior to commencement of a bankruptcy case are barred by the confirmation of a Chapter 13 plan. See

---

[7]     Chapter 13 bankruptcy enables a debtor to file a plan providing for payments of fixed amounts to a bankruptcy trustee on a regular basis. The plan must be submitted for approval by a Bankruptcy Court. Once the plan is approved, the bankruptcy trustee distributes the funds to creditors according to the terms of the plan. See 11 U.S.C. §§ 1321-1326 (2006).

Def's Mem. at 9 n.2 (citing Stebbins v. State Farm Mut. Auto Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir. 1969 ) (affirming the district court's grant of a motion to dismiss on res judicata grounds in an employment discrimination case)) and Fed. Deposit Ins. Corp. v. O'Donnell, 136 B.R. 585, 587 (D.D.C. 1991) (holding that a Bankruptcy Court's judgment may be used for res judicata purposes even if the judgment concerned a non-debtor)). In response, the plaintiff points out that "the matter[s] currently before this [C]ourt [have] not already been addressed on the merits," noting that "motions to lift stay[s] are limited proceedings and are not designed to consider the merits of substantive claims." Pl.'s Opp'n at 18. The plaintiff cites In re Jackson, 42 B.R. 76 (Bankr. D.D.C. 1984), for the proposition that a hearing seeking relief from an automatic stay "will not be the appropriate time at which to bring in other issues, such as counterclaims against [a] creditor, which, although relevant to the question of the amount of debt, concern largely collateral or unrelated matters." Id. at 81-82 (quoting the legislative history of the 11 U.S.C. § 362, the provision of the bankruptcy code providing for an automatic stay); see id. at 81 (observing that "matters appropriate for consideration in proceedings for relief from the stay are limited"). The Court agrees with the plaintiff and finds that the substantive, legal claims being raised in this case were not addressed by the Bankruptcy Court, either in connection with the confirmation of the Chapter 13 plan or the order modifying the automatic stay, nor was it necessary for the plaintiff to raise the claims in the bankruptcy proceedings. Res judicata therefore does not bar the plaintiff from pursuing her claims as they have not been subject to a final judgment on the merits. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Polsby v. Thompson, 201 F. Supp. 2d 45, 48 (D.D.C. 2002).

Thus, because the claims must be resolved through adversary proceedings and were not raised and litigated during the hearing on the motion to stay or the Chapter 13 confirmation, see

Cen-Pen Corp., 58 F.3d at 93 (observing that "if an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect"); Def.'s Mem., Ex. F (Amended Plan and Confirmation Order), the plaintiff's consent to the confirmation of the Chapter 13 plan or the modified stay does not have res judicata effect as to the plaintiff's breach of fiduciary duty claim, and CGD's Rule 12(b)(6) motion must be denied.

>  D. CGD's Failure to State a Claim Challenge

>> 1. The Plaintiff's Fraud Claim

CGD moves to dismiss Count 1 of the Complaint under Rule 12(b)(6) on the basis that the plaintiff has failed to adequately plead a claim for fraud against it. Def.'s Mot. ¶ 3; Def.'s Mot. at 4-6. In her Opposition, the plaintiff clarifies that she is not alleging fraud against GCD in Count 1 of the Complaint, and that her only allegations against CGD are in Count 8 for breach of fiduciary duty. Pl.'s Opp'n at 1, 3, 8; Def.'s Reply at 2. Although the plaintiff states that she did not bring a Fraud claim against CGD, CGD is indeed named in Count 1 of the Complaint. Compl. ¶ 36 ("CGD was fully apprised of this unethical practice, yet it knowingly and willfully advanced Defendant FMV's scheme by initiating the foreclosure proceedings in this action."). Based on the plaintiff's clarifications, however, CGD's motion to dismiss the fraud claim to the extent that it is levied against CGD is granted as conceded.

>> 2. The Plaintiff's Breach of Fiduciary Duty Claim

CGD moves for dismissal under Rule 12(b)(6) on the grounds that the plaintiff has failed to state a claim for breach of fiduciary duty because it did not owe any fiduciary duty to the plaintiff, or, in the alternative, that its fiduciary duties as trustee on the deed of trust were limited and that it did not breach those limited duties. Def.'s Mot. ¶ 5; Def.'s Mem. at 6-8.

Trustees on deeds of trust owe fiduciary duties to both the borrower and the lender. S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n, 505 F.2d 370, 377 n.21 (D.C. Cir. 1974); Perry v. Virginia Mortg. & Inv. Co., 412 A.2d 1194, 1197 (D.C. 1980). The trust relationship is limited to "a power to convey title under certain circumstances," and the duty is therefore more limited than the fiduciary duty conferred on trustees generally. Id. Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."[8] In re Rothenberg, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing Perry, 412 A.2d at 1197). Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." S & G Inv. Inc., 505 F.2d at 377 n.21. Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties. Sheridan v. Perpetual Bldg. Ass'n, 322 F.2d 418, 422 (D.C. Cir. 1963). However, in order to state a claim against a trustee for breach of fiduciary duty, a plaintiff must allege facts that would constitute a breach of a duty under the trust instrument or District of Columbia law, or allege fraud, misrepresentation, self-dealing or overreaching. Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 325 (D.C. 2008); In re Rothenberg, 173 B.R. at 18.

Before addressing the core of the plaintiff's breach of fiduciary duty claim, the Court must first assess the nature of the breach allegedly committed by CGD. The breach of fiduciary duty claim in Count 8 of the Complaint clearly alleges wrongdoing by CGD, but the threshold question is whether the plaintiff, in essence, asserts a fraud claim against CGD that triggers the heightened pleading requirements of Rule 9(b). See Compl. ¶ 89 ("Defendant [CGD] breached its fiduciary duty and acted solely on the behalf of Defendants and their own self-interest by facilitating a fraudulent, self-dealing predatory real estate transaction and foreclosure that would

---

[8] Here, D.C. Code § 42-815 (2001) governs the required notice of foreclosure sales.

result in its receiving payment of twenty percent (20%) of the outstanding loan amount from the foreclosure proceeds."); id. ¶ 91 ("Notwithstanding the fiduciary duty [CGD] owed to [the plaintiff] and its knowledge of the circumstances leading up to the loan, the predatory terms and conditions of the loan, and the potential fraud against the [p]laintiff, [CGD] ignored its duty to the [p]laintiff and aggressively pursued its claims against the debtor on behalf of the [d]efendant FMV."); Pl.'s Opp'n at 3 ("[The breach of fiduciary duty] claim must, however, be viewed in the context of each of [the] [p]laintiff's other claims which assert violation of D.C. law . . . as well as its fraudulent underpinnings."); id. at 10 ("Based upon the shifted burden, [the] [p]laintiff need only plead facts demonstrating that CGD was the trustee, that there was a conflict of interest, that a foreclosure and/or collection action was initiated, and that the matter related in some matter to the advancement of an illegal objective, including fraud and the like. . . . Each count asserted in the context of consumer real estate protection definitively and statutorily speaks to a cause of action that embodies consumer based <u>fraud, misrepresentation, over-reaching, or self-dealing</u>." (emphasis in original)).

     After close examination of the plaintiff's allegations, it appears to the Court that Rule 9(b)'s heightened pleading requirements do not apply because the plaintiff's breach of fiduciary duty claim against CGD seems to stem from allegations of self-dealing, not fraud. As noted above, a claim for fraud requires a false representation concerning a material fact. <u>Acosta Orellana</u>, 711 F. Supp. 2d at 96. However, the plaintiff's breach of fiduciary duty claim does not hinge on whether CGD made any false representation; instead, her claim is that CGD acted in its own self-interest by acting as a trustee on a loan involving a "predatory real estate transaction," and then instituting foreclosure proceedings based on that transaction, which if successful would result in CGD receiving payment of twenty percent of the outstanding loan amount. Compl. ¶

14

89. The type of conduct alleged, then, amounts to dishonest, disingenuous, and perhaps wrongful behavior, but not fraud. See In re Grumman Olson Indus., Inc., 329 B.R. 411, 430-31 (Bankr. S.D.N.Y. 2005) (finding a breach of fiduciary duty claim to "allege[] a course of dishonest conduct involving self-dealing, misappropriation, diversion of assets," but not fraud, and declining to impose Rule 9(b) pleading standards); Jackson v. N'Genuity Enters. Co., No. 09 CV 6010, 2010 WL 4628668 at *2 (N.D. Ill. Nov. 8, 2010) ("[C]ourts have held that claims of [breach of] fiduciary duty are subject to the pleading requirements of Rule 9(b) only where the facts underlying the breach involve fraudulent conduct." (citing Robison v. Caster, 356 F.2d 924, 925 (7th Cir. 1966)). Even if the plaintiff did intend to assert that CGD breached its fiduciary duty by acting fraudulently and in its own self-interest, only such a breach based on alleged fraud must meet Rule 9(b)'s enhanced pleading requirements. See Baltimore Cnty. v. Cigna Healthcare, 238 Fed. Appx. 914, 921 (4th Cir. 2007) ("In evaluating whether a cause of action must be [pleaded] with particularity, a court should examine whether the claim requires an essential showing of fraud."); Vess v. Ciba-Ceigy Corp., 317 F.3d 1097, 1103-05 (9th Cir. 2003) ("[I]n a case where fraud is not an essential element of the claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need only satisfy the ordinary notice pleading standards of Rule 8(a)."); Lone Star Ladies Inv. Club v. Schlotszky's Inc., 238 F.3d 363, 368 (5th Cir. 2003) ("Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated."); In re NationsMart Corp. Secs. Litig., 130 F.3d 309, 315 (8th Cir. 1997) (finding that nonessential allegations of fraud that fail to comply with 9(b) will "be stripped from the claim," but are not grounds for dismissal).

Turning to what now remains of the breach of fiduciary duty claim, the Court concludes that the plaintiff has adequately pleaded that GCD breached its fiduciary duties. First, she asserts that CGD is a trustee on the deed of trust, Compl. ¶ 8, despite CGD's denial that it is a trustee. Def.'s Mem. at 6. And, the trustees named on the Deed of Trust are Ronald S. Deutsch, Edward S. Cohn, Steven Goldberg, Richard J. Rogers and Richard Solomon, all attorneys with the CGD law firm. Deed of Trust at 1; Def.'s Reply at 2. While CGD seeks to draw a distinction between the individuals named as trustees and the CGD law firm itself, CGD does not go so far as to suggest that the plaintiff should have brought this action against the individual members of the firm rather than the law firm. In any event, the Court finds that naming CGD as a defendant under these circumstances is sufficient to satisfy the minimal pleading requirements of the Federal Rules of Civil Procedure. Moreover, the plaintiff alleges that CGD has conflicting interests because in addition to acting as trustee, it also acted as counsel for FMV in the foreclosure proceedings. Id. ¶¶ 8, 25, 88-97. She also alleges facts suggesting self-dealing by CGD, and, as noted above, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Schuler, 617 F.2d at 608 (internal citations omitted). In this regard, the plaintiff alleges a series of acts by CGD that may evidence bad faith and self-dealing, including that CGD knew or should have known that the plaintiff would not be able to afford the loan that she acquired from FMV, and that foreclosure was therefore likely, id. ¶ 90;[9] that CGD nevertheless became the trustee on the deed of trust, id. ¶¶ 8, 25; and that the deed of trust included a payment of 20% of

---

[9] As trustee, it is reasonable to infer that CGD had knowledge of the terms of the loan, e.g., the balloon payment and steep penalties for late- and non-payment, as they are referenced in the Deed of Trust itself. Def.'s Mot., Ex. A (Deed) at 2.

the outstanding loan to the attorney that represented FMV (which turned out to be CGD) in any foreclosure proceedings, id. ¶¶ 31, 89, 92. Although plaintiff's counsel does not cite any legal authority specifically addressing the type of instrument at issue in this case, it certainly seems plausible that acting as a trustee on a deed of trust that secures a loan on which the borrower is likely to default, coupled with the recovery by the trustee of a handsome attorney's fee in the event of default, amounts to self-dealing.[10] Accordingly, CGD's Rule 12(b)(6) motion to dismiss is denied.

## IV. CONCLUSION

As explained above, the plaintiff's Complaint sets forth allegations that sufficiently demonstrate her standing to bring these claims as a Chapter 13 debtor in possession on behalf of the bankruptcy estate, and states a claim for breach of fiduciary duty. Moreover, the plaintiff has demonstrated that the claim is not barred by the doctrine of res judicata. Accordingly, the Court will deny CGD's motion to dismiss the breach of fiduciary duty claim asserted in Count 8 of the Complaint, but will grant the motion as to the fraud claim asserted in Count 1 of the Complaint.[11]

**SO ORDERED** this 24th day of May, 2011.

_____
REGGIE B. WALTON
United States District Judge

---

[10] Self-dealing may be found where there is both a motive and an outcome that could sufficiently evidence bad faith or actions motivated by self-interest. See States Resources Corp. v. The Architectural Team, Inc., 433 F.3d 73, 81 (1st Cir. 2005).

[11] The Court will issue an order consistent with this Memorandum Opinion.